## CHARLES M. FREEMAN v. BOARD OF REGISTRY AND ELECTION OF METUCHEN.

Submitted September 30, 1907—Decided September 30, 1907.

1. *Mandamus* will lie to compel a board of registry and election to make up and sign such a statement of the result of a primary election as is required by *Pamph. L.* 1903, *p.* 617, § 15.
2. Where on *mandamus* to compel a board of registry and election to make up and sign the statement of the result of a primary election required by *Pamph. L.* 1903, *p.* 617, § 15, it is necessary to open the ballot-boxes to comply therewith, that course may be taken.
3. *Pamph. L.* 1903, *p.* 603, being an act in supplement of the act to regulate elections (*Pamph. L.* 1898, *p.* 237), makes sections 58 and 59 of the act of 1898 applicable to primary elections. Section 58, page 267, declares void ballots which contain a mark other than is permitted by that act. Section 59 provides that a voter may erase from his ballot any name or write thereon the name of any person for whom he desires to vote. *Held,* that a board of registry and election, at a primary election, was without right to reject, as marked ballots, over sixty ballots on which a candidate's name was written in the same handwriting, and that it was not essential that the voter himself must have written the name of the candidate.
4. Under *Pamph. L.* 1898, *p.* 268, § 59, providing that a voter may erase from his ballot any name or write thereon the name of any person for whom he desires to vote, and *Pamph. L.* 1903, *p.* 603, making section 59 applicable to primary elections, a member of one party may vote for a member of another party as the nominee of such voter's party, and there is nothing in the general object of the public laws of 1903 denying such right.

---

On rule to show cause why *mandamus* should not issue.

Before Justice SWAYZE.

For the relator, *Willard P. Voorhees.*

For the defendants, *Freeman Woodbridge.*

The opinion of the court was delivered by

SWAYZE, J.   This case was argued before me by consent, pursuant to section 251 of the Practice act.

It is conceded, and is apparent on the face of the certificate, that the defendants failed to make up and sign such a statement of the result of the primary election as is required by section 15 of the act.   *Pamph. L.* 1903, *p.* 617.   This of itself requires that a *mandamus* should go to compel the performance of the plain statutory duty..   It is said that such a *mandamus* was not within the terms of the rule to show cause, but this involves a misconstruction of the rule which follows accurately the language of the act.   The addition of the clause which specifies particularly a statement of the entire number of Democratic ballots cast for Freeman was quite unnecessary, but was wise in view of the particular controversy which had arisen.   Its only effect was to apprise the defendants of the special complaint they would be called on to meet, but it does not in any way qualify or limit the previous language.

In defence of the board it is said that it is now impossible for them to make such a statement as the law requires.   If so, the impossibility has been created by the defendants, and they could not be allowed to escape the performance of their duty in that way.   They might as well burn the ballots before counting them and then seek to exculpate themselves by pleading that they had nothing to count.   I am by no means sure that they cannot prepare a proper statement without opening the ballot-boxes, but if that course is necessary, it may be taken.   Such a proceeding is not a recount.   It is a mere ascertainment of the result of the original count.

While a *mandamus* must issue, I think the controversy which has arisen makes it proper for the writ to contain a specific direction as to the Democratic ballots cast for Free--

man. The board had no right to reject these ballots as marked ballots. It is not the fact that one ballot could be distinguished from another. Over sixty had Freeman's name written in the same handwriting, and the case is stronger in that respect than *Hackett* v. *Mayhew,* 33 *Vroom* 481, in which we held that where the contestant had written his name on fourteen ballots it was a question of fact whether that writing was a distinguishing mark. A more complete answer to the defendants' contention is that the statute in terms permits a ballot to be marked in that way. Sections 58 and 59 of the act to regulate elections are made applicable to primary elections. Section 58 makes void ballots which contain a mark "other than is permitted by this act," and section 59, to remove all doubt, expressly permits a voter to write on his ballot the name of any person for whom he desires to vote. The contention that the voter must write the name himself is without merit. Such a requirement would thwart the very purpose of most of the act, which is to secure secrecy of the ballot. It would be equivalent to requiring a voter who wished to alter his ballot to put his autograph thereon.

The stress of the defence was in the contention that Freeman was a Republican, and that no Democrat could vote for him as the Democratic nominee. The evidence leaves it in doubt whether Freeman was a Republican or a Democrat. He seems to have considered himself as a Republican. One, at least, of the election board seems to have regarded him as a Democrat, and a majority of those who elected to vote at the Democratic primary evidently thought he was worthy of a place on the Democratic ticket. I am unable to determine the fact. For aught that the evidence shows, he was improperly put on the official ballot for the Republican primary, and was himself in error in voting as a Republican.

Assuming, however, as counsel seemed to concede, that Freeman was a Republican, I find nothing in the act to prevent Democrats from voting for him at their own primary. There are provisions, of course, which prevent the name of a Republican from being placed on an official Democratic ballot

at the primary, but this is because the law, in establishing definite tests, has to adopt a somewhat artificial mode of defining a Democrat and a Republican, based upon whether he has voted a certain ticket, and not upon his political principles and beliefs. It would exalt party names into a more important place than they have ever held to forbid men from voting at a primary election for one whose political views pleased them merely because he did not answer the artificial definitions of the statute by voting at a previous election a ticket with a particular label, and it would be quite out of harmony with the views of most thoughtful men to import these artificial divisions of parties into municipal elections by a ruling so hard and fast as that for which the defendants contend. The language of the act does not lead to such a constructon. The permission given by section 59 of the act of 1898 to vote for any person is as broad as words can make it.

Nor is there anything in the general object of the act of 1903 which sustains the defendants' view. That object is accomplished when it is made sure that each voter shall vote only once at a primary election in whichever box he may choose. That act was never meant to entrust to an election board the power to determine, without a hearing, to what party a man belongs, and as a result of that determination to reject ballots honestly cast for him.

The facts in the case are not in dispute. The matter is one of public importance in which delay would deprive the remedy of all efficacy. A peremptory writ of *mandamus* should issue.